UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

ROBERT RAINEY,

                       Plaintiff,

                                               5:19-CV-956
v.                                           (MAD/TWD)


COUNTY OF JEFFERSON, et al.,

                       Defendant.
───────────────────────────────────────────

APPEARANCES:

ROBERT RAINEY
 Plaintiff, *pro se*
C7370
Jefferson County Jail
753 Waterman Drive
Watertown, New York 13601

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

      This Court issued an Order and Report-Recommendation on August 26, 2019, granting

Robert Rainey's ("Plaintiff") application to proceed *in forma pauperis* and recommending his

Complaint (Dkt. No. 1) be dismissed without prejudice.  (Dkt. No. 7.)   On September 9, 2019,

Plaintiff moved to amend his complaint.  (Dkt. No. 8.)  Hon. Mae A. D'Agostino, United States

District Judge, granted Plaintiff's motion to amend and directed this Court to perform an initial

review pursuant to 28 U.S.C. § 1915.  (Dkt. Nos. 9, 11.)  Plaintiff thereafter re-filed his

Amended Complaint on September 26, 2019, along with four exhibits.  (Dkt. Nos. 12, 12-1, 12-

2, 12-3, 12-4.)  In his Amended Complaint, Plaintiff added Sheriff Colleen O'Neill ("Sheriff

O'Neill"), C.O. Maulett ("Maulett"), and Detective Perry Golden ("Detective Golden") as

defendants and expanded on the factual allegations set forth in his original complaint. For the reasons that follow, this Court recommends Plaintiff's claim relative to his pre-arraignment detention be allowed to proceed but each of his other claims be dismissed.

## I.    SUFFICIENCY OF THE COMPLAINT

### A.    Standard of Review

28 U.S.C. § 1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2)(B)(ii). "Sua sponte dismissal of a pro se complaint prior to service of process is a 'draconian device,' which is warranted only when the complaint lacks an arguable basis either in law or in fact." *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (per curiam) (citations and internal quotation marks omitted).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)

(citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Where a plaintiff proceeds *pro se*, the court reads the complaint liberally and construes its allegations to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). Moreover, a court should not dismiss a *pro se* complaint "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**B.    Summary of the Amended Complaint**

According to Plaintiff, on May 2, 2019, at 8:45 a.m. he was at his parole office when his parole officer told him the "Drug Task Force" ("DTF") was looking for him under the orders of Sheriff O'Neill. (Dkt. No. 12 at ¶ 8.) A city police officer then came to the parole office. (*Id*.) Plaintiff asked the officer to see the warrant for his arrest and asked why he was being arrested but the officer said he did not know. (*Id*.) Plaintiff's parole officer also did not know why he was being arrested but said it was not for a parole violation. (*Id*.) According to Plaintiff, the officer who drove him to the jail opined that he was being arrested under a sealed indictment and the officer was told to take Plaintiff to the county jail. (*Id*. at ¶ 9.) At the jail, he met Detective Golden and DTF Detective Boyle in a small fingerprinting room. (*Id*.) Plaintiff alleges these police officers asked if he would be willing to work for them to set up drug-busts. (*Id*.) Plaintiff declined. (*Id*.) Plaintiff contends Detective Golden then said "he got something for me." (*Id*.)

Plaintiff was then fingerprinted and Detective Golden told Maullet to commit Plaintiff into jail. (*Id*.)  Plaintiff asked Detective Golden about the arrest warrant, but he was told to "take it up with [his] lawyer."  (*Id*. at ¶¶ 9-10.)

Maullett led Plaintiff to an isolated area and performed a strip-search on Plaintiff.  (*Id*. at ¶ 10.)  Specifically, Plaintiff said he "was told to remove [his] boxers (drawers) turn around, bend over and cough."  (*Id*.)  Plaintiff was then placed in the County Jail amongst other inmates without a securing order from a judge.  (*Id*.)  Plaintiff was arraigned the next day.  (*Id*.)

Plaintiff attached four exhibits to his Amended Complaint.  First is his "Booking Data Sheet" indicating he was arrested on May 2, 2019, at 9:00 a.m.  (Dkt. No. 12-1.)  The second exhibit is his New York State Arrest Report indicating that he was arraigned on May 2, 2019, in front of Judge Martusewicz in Jefferson County.  (Dkt. No. 12-2.)  Third is a letter from Terry A. Roos, the "Deputy Chief Clerk," noting that Plaintiff was arraigned on May 3, 2019.  (Dkt. No. 12-3.)  Finally, Plaintiff appended a letter to his assigned counsel indicating he was arraigned on May 3, 2019.  (Dkt. No. 12-4.)

According to Plaintiff, these facts demonstrate his Fourth, Thirteenth, and Fourteenth Amendment to the United States Constitution rights were violated and the state actors were negligent.  (*Id*. at ¶ 12.)  Although he does not specifically label his claims, the Court construes his Amended Complaint as alleging the following claims: (1) a Fourth Amendment illegal search claim against Maullet with a derivative *Monell* claim against the County of Jefferson relative to his Fourth Amendment Claim; (2) a claim related to his pre-arraignment confinement against Detective Golden; (3) a false arrest and false imprisonment claim; (4) a Thirteenth Amendment claim relating to his pre-trial detention; and (5) a state negligence claim.

### C.    Analysis

Section 1983 "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)).  "Section 1983 'is not itself a source of substantive rights[,]' . . . but merely provides 'a method for vindicating federal rights elsewhere conferred[.]'" *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 (1979)).  To state a claim pursuant to Section 1983, a plaintiff must allege "(1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

### i.    *Fourth Amendment Claims*

The Supreme Court has recognized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 328 (2012).  Thus, a prison regulation that impinges on inmates' constitutional rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Determining whether a strip search is reasonable "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

In *Florence*, the Supreme Court considered "whether every detainee who will be admitted to the general population may be required to undergo a close visual inspection while undressed" during the inmate intake process. 566 U.S. at 322. The plaintiff in *Florence* was arrested on a bench warrant stemming from his failure to appear at a hearing to enforce a fine. *Id*. at 323. During intake processing, "prior to [his] admission to the general population" in two different facilities, he was subjected to searches that required him to, *inter alia*, "lift his genitals, turn around, and cough in a squatting position." *Id*. at 324–25. "This policy applied regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history." *Id*. at 324. After the strip search at the second facility, the plaintiff was admitted to general population and "released the next day, when the charges against him were dropped." *Id*.

The Supreme Court held the jails' policies, which permitted strip searches during the intake process, even without reasonable suspicion of concealed contraband, did not violate inmates' constitutional rights. *Id*. at 339. Justice Kennedy, writing for the majority, explained "there is no mechanical way to determine whether intrusions on an inmate's privacy are reasonable," and that any analysis of the "need for a particular search must be balanced against the resulting invasion of personal rights." *Id*. at 327. The task "of determining whether a policy is reasonably related to legitimate security interests is 'particularly within the providence and professional expertise of corrections officials.'" *Id*. at 328 (quoting *Bell*, 441 U.S at 548). This is due to numerous and ever-changing "risks for facility staff, for the existing detainee population, and for a new detainee himself or herself" both during and after the intake process. *Florence*, 566 U.S. at 330. Justice Kennedy concluded that, because "[o]fficers who interact with those suspected of violating the law have an essential interest in readily administrable

rules," requiring officials in charge of jails to "conduct less thorough inspections" of "any suspected offender who will be admitted to the general population in their facilities" would only serve to "limit the intrusion on the privacy of some detainees . . . at the risk of increased danger to everyone in the facility, including the less serious offenders themselves." *Id*. at 338. Thus, these risks "offer significant reasons why the Constitution must not prevent them from conducting the same search on any suspected offender who will be admitted to the general population in their facilities." *Id*.

Here, Plaintiff alleges he was transported to Jefferson County Jail after being arrested under a sealed indictment and he was subject to a strip search before being placed in the general jail population. (Dkt. No. 12 at ¶ 9-10.) Notably, the factual details of Plaintiff's strip search are nearly identical to the plaintiff in *Florence*. (*Id*. at ¶ 10.) Thus, given the Supreme Court's holding in *Florence*, Plaintiff's allegations relative to the strip search do not give rise to a constitutional violation. *See Florence*, 566 U.S. at 341 (Alito, J. concurring) (concluding "there are reasonable grounds for strip searching arrestees before they are admitted to the general population of a jail"). Accordingly, the Court recommends Plaintiff's Fourth Amendment claim against Defendant Maullett be dismissed.

Furthermore, to plead a municipal liability claim, Plaintiff must allege "that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019). Where, as here, the complaint fails to allege an individual defendant's conduct violated Plaintiff's constitutional rights, the municipality is not liable for the policy or custom pursuant to which the conduct was performed. Accordingly, the Court recommends Plaintiff's Fourth Amendment claims against the County of Jefferson be dismissed.

ii.  *Excessive Pre-Arraignment Detention*

The Supreme Court has held that an arraignment held within 48 hours of arrest will generally meet constitutional requirements.  *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).  Nonetheless, even a person arraigned within 48 hours of his arrest may have suffered a Fourth Amendment violation if his arraignment was unreasonably delayed.  *Id*. at 56.  A delay is considered unreasonable if it is "motivated by ill will against the arrested individual, or [constitutes] delay for delay's sake."  *Bernshtein v. City of New York*, 2010 WL 2541617, at *1 (S.D.N.Y. June 22, 2010) (citation omitted).  A plaintiff arraigned within 48 hours of his arrest bears the burden of demonstrating unreasonable delay.  *Brown v. City of New York*, 2004 WL 2884306, at *16 (S.D.N.Y. Dec. 10, 2004).

Granting a liberal reading of the Complaint, the Court finds his delay in arraignment claim survives initial review.  To that end, Plaintiff makes several allegations that could show the delay in arraignment was intentional or unwarranted.  (*See, e.g.,* Dkt. No. 12 at ¶ 9 (wherein Plaintiff asserts Defendant Golden told him "he's got something for [him]" after Plaintiff refused to help him with putative drug set-ups); *id*. at ¶ 10 (Plaintiff asserts Defendant Golden intentionally altered the alleged date of the arraignment to an earlier date on his Arrest Report).)  Thus, the Court finds there are enough facts to infer the delay in arraignment was intentional and the Court recommends this claim survive initial review as against Defendant Golden in his individual capacity.

Notably lacking in the Complaint are any facts attempting to establish supervisory liability or *Monell* liability.  Therefore, the Court recommends Plaintiff's official capacity suit relative to his delay in arraignment as well as any claims against Sherriff O'Neill or the County of Jefferson be dismissed.

### iii.    False Arrest and Imprisonment Claims

To prove a claim of false arrest or imprisonment, a plaintiff must show: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  Confinement is "privileged" if the defendant had probable cause to arrest the plaintiff.  *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003).  A plaintiff cannot establish a claim for false arrest if probable cause existed at the time of the arrest.  *Singer*, 63 F.3d at 118–19.  Probable cause is presumed to exist if a plaintiff is arrested pursuant to an arrest warrant.  *Martinetti v. Town of New Hartford*, 12 Fed. Appx. 29, 32 (2d Cir. 2001).

Here, Plaintiff admits he was arrested and thereafter confined pursuant to a sealed indictment and arrest warrant the Hon. Kim Martusecz, Jefferson County Judge, issued on April 30, 2019.  (Dkt. No. 12-3.)  Notably, Plaintiff does not appear to challenge the validity of the warrant or the factual circumstances giving rise to the indictment.  Accordingly, Plaintiff's Amended Complaint effectively undermines any viable false arrest or false imprisonment claim. Therefore, the Court recommends Plaintiff's false arrest/imprisonment claims be dismissed.

### iv.    Thirteenth Amendment Claim

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."  U.S. Const. amend. XIII, § 1. The Amendment was intended to prohibit all forms of involuntary labor, not solely to abolish chattel slavery.  *See Slaughter–House Cases*, 83 U.S. 36, 69 (1872) ("The word servitude is of larger meaning than slavery. . . ."); *see also Pollock v. Williams*, 322 U.S. 4, 17–18 (1944)

9

(noting that the "undoubted aim of the Thirteenth Amendment . . . was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States").

Because the Thirteenth Amendment "denounces a status or condition, irrespective of the manner or authority by which it is created," *Clyatt v. United States*, 197 U.S. 207, 216 (1905), institutions housing pretrial detainees are not exempt from the Amendment's scope. Plaintiff was not "duly convicted," U.S. Const. amend. XIII, and therefore does not fall within the category of persons to whom the Amendment, on its face, does not apply.

In *United States v. Kozminski*, 487 U.S. 931, 952 (1988), the Supreme Court defined involuntary servitude as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process."

In his Complaint, Plaintiff failed to make any allegations regarding whether he was forced into labor or some other condition of servitude. Accordingly, his claim is not properly pled, and the Court recommends it be dismissed.

### v. State Law Claims

Plaintiff's complaint contains a general reference to "negligence" in the context of his civil rights violation allegations and mentions several instances of "negligent" behavior by county employees. These legal conclusions, however, even viewed favorably to Plaintiff, do not satisfy the pleading standard to plausibly state a claim for negligence under state tort law. *See Iqbal*, 556 U.S. at 680-81. As a result, the Court recommends Plaintiff's tort claims be dismissed.

## II.      LEAVE TO AMEND

Because Plaintiff has already been given the opportunity to amend his complaint, and the allegations in his amended complaint, construed liberally, give no indication that a valid claim might be stated if Plaintiff were given another opportunity to amend, *see Gomez*, 171 F.3d at 795, the Court recommends that the dismissal against Sheriff O'Neill, Jefferson County, and Maullett be with prejudice.

## III.     CONCLUSION

For the reasons stated above, the Court recommends Plaintiff's complaint be dismissed with the exception of Plaintiff's claim relative to the delay in arraignment as against Detective Golden.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that the Complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE** against Defendant C.O. Maullett, Sheriff O'Neill, and the County of Jefferson; and it is further

**RECOMMENDED** that Defendant Golden be required to respond to Plaintiff's claims for the alleged unreasonable pre-arraignment delay in the amended complaint (Dkt. No. 12.); and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**<u>PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72, 6(a).

Dated: October 30, 2019
        Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

12 Fed.Appx. 29
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Anthony J. MARTINETTI, III and Phyllis
Ann C. Martinetti, Plaintiffs–Appellants,

v.

The TOWN OF NEW HARTFORD
POLICE DEPARTMENT and The Town
of New Hartford, Defendants–Appellees.

No. 00–9380.
|
May 17, 2001.

**Synopsis**

Arrestee and her husband brought § 1983 claim against town, alleging false arrest. Town's motion for summary judgment was granted by the United States District Court for the Northern District of New York, David N. Hurd, J., 112 F.Supp.2d 251, and plaintiffs appealed. The Court of Appeals held that: (1) even if police officer acted in reckless disregard for the truth in causing an arrest warrant to be issued, town was not liable under § 1983 absent allegation that town had either a policy or custom of ignoring exonerating evidence presented to a police officer, and (2) town was not liable based on a certificates of protest of insufficient funds check prepared by person who was also a police department secretary.

Affirmed.

West Headnotes (6)

**[1]    False Imprisonment**
👍 Probable cause

A claim for false arrest cannot stand if probable cause existed at the time of the arrest.

5 Cases that cite this headnote

**[2]    Arrest**
👍 What constitutes such cause in general

While an arrest pursuant to a facially valid arrest warrant is presumed to be made with probable cause, an arrestee can demonstrate that the right not to be arrested without probable cause was violated where the officer submitting the probable cause affidavit acted with reckless disregard for the truth. U.S.C.A. Const.Amend. 4.

8 Cases that cite this headnote

**[3]    Arrest**
👍 Authority under warrant

**Civil Rights**
👍 Criminal law enforcement; prisons

Police officer's actions in ignoring exonerating information offered to him and then causing an arrest warrant to be issued without further investigation could be construed as acting in reckless disregard for the truth, thereby rebutting the presumption of probable cause arising from facially valid arrest warrant, but even if so, arrestee and her husband could not recover against town under § 1983, absent allegation that town had either a policy or custom of ignoring exonerating evidence presented to a police officer. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

2 Cases that cite this headnote

**[4]    Civil Rights**
👍 Criminal law enforcement; prisons

Even if police officer's actions in procuring an arrest warrant were reckless, to sustain a § 1983 cause of action against the town, arrestee had to show that the action that was alleged to be unconstitutional implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the town's officers or that the actions were done pursuant to governmental custom, even though such a custom had not received formal approval through the body's official decisionmaking channels. 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

## [5]    Arrest

    👉 Authority under warrant

An arrest warrant procured by fraud, perjury or the misrepresentation or falsification of evidence can overcome the presumption of probable cause.

5 Cases that cite this headnote

## [6]    Civil Rights

    👉 Criminal law enforcement;  prisons

The facts that police department had in the past used certificates of protest of insufficient funds checks prepared by person who was in the business of preparing such protests and was also a police department secretary, and that her supervisors were aware that she engaged in such activities, were insufficient to establish the existence of a custom or official policy, and thus person arrested pursuant to such a protest could not recover against town under § 1983 even if the protest contained material misrepresentations, absent evidence that town supervised or directed the preparer's actions, that she used resources of the police department, or that her check protesting activities fell within the scope of her employment. 42 U.S.C.A. § 1983.

2 Cases that cite this headnote

**\*30**  Appeal from the United States District Court for the Northern District of New York, David N. Hurd, Judge.

**Attorneys and Law Firms**

Waddie N. Kalil, Kalil & Kalil, P.C., Utica, NY, for plaintiffs-appellants.

Matthew E. Hamlin, Kernan and Kernan, P.C., Utica, NY, for defendants-appellees.

Present WINTER, STRAUB and POOLER, Circuit Judges.

*SUMMARY ORDER*

**\*\*1**  AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Plaintiffs–Appellants Anthony and Phyllis Martinetti appeal from a Memorandum–Decision and Order filed September 18, 2000 by the United States District **\*31**  Court for the Northern District of New York (David N. Hurd, *Judge* ) granting summary judgment to the Town of New Hartford ("New Hartford") [1] on the Martinettis' federal claims and remanding the remaining state law claims to state court. On appeal, the Martinettis contend that the District Court erred by granting summary judgment because they have proffered sufficient evidence to raise a triable § 1983 claim.

On May 25, 1997, Phyllis Martinetti purchased merchandise from Sears & Roebuck ("Sears") in New Hartford, New York by issuing a personal check for $75.58. The check was drawn from a joint checking account that the Martinettis maintained at the Central National Bank located in Edmeston, NY. When issued, there were sufficient funds in the Martinettis' account to cover the check. However, subsequently and unbeknownst to the Martinettis, a former employer of Anthony Martinetti made several unauthorized electronic deposits and withdrawls to the account so that when presented for payment, the check was returned for insufficient funds.

On July 11, 1997, notary public Amy A. Topor prepared a Certificate of Protest and Notice of Dishonor, the first step in a prosecution for issuing a bad check in violation of New York Penal Law § 190.05(1), a Class B misdemeanor. In addition to engaging in a part-time business of protesting bounced checks for businesses in and around New Hartford, Topor was also employed as a secretary by the New Hartford Police Department. The Martinettis allege that the Certificate of Protest prepared by Topor was invalid, containing several material false statements including a representation that she personally presented the check for payment at the Central National Bank, when in actuality she merely telephoned the bank.

After Topor prepared the Certificate of Protest, a Sears representative signed and filed an Information/Complaint with the New Hartford Police Department. Thereafter, a letter was sent to the Martinettis requesting that Mrs. Martinetti appear within three days to answer the criminal charge. In response, Anthony Martinetti went to the New Hartford Police Station and met with Lt. Timothy P. O'Neill. There, Mr.

Martinetti attempted to explain the situation and presented Lt. O'Neill with bank statements demonstrating that when written, there were ample funds in the account to cover the check—thereby demonstrating that Mrs. Martinetti could not have violated § 190.05(1), which requires that the issuer of the check "utter[ ] a check knowing that he ... does not then have sufficient funds with the drawee to cover it...." Lt. O'Neill, however, refused to examine the evidence and told Mr. Martinetti that "I am going to arrest [your wife]." The next day, Lt. O'Neill directed a subordinate to obtain an arrest warrant. After the warrant was issued by a town judge, Mrs. Martinetti was arrested by the Otsego County Sheriff's Department at her place of employment; later a New Hartford Police Department Officer drove to Otsego County where Mrs. Martinetti was handcuffed and transported to New Hartford for arraignment.

**\*\*2** On August 19, 1997, the charges were adjourned in contemplation of dismissal. The Martinettis thereafter commenced an action for false arrest in violation of the federal constitution and several state common law torts. The case was removed to the District Court for the Northern District **\*32** of New York pursuant to 28 U.S.C. § 1441. On September 14, 2000, the District Court granted the defendant's motion for summary judgment, finding that the Martinettis could not demonstrate that the facially valid arrest warrant was obtained through "fraud, perjury, or the misrepresentation or falsification of evidence." Further, the District Court declined to exercise supplemental jurisdiction and remanded the remaining state law claims to New York Supreme Court. The Martinettis thereafter appealed to this court.

We review orders granting summary judgment de novo, focusing our inquiry on whether the district court properly concluded that the moving party was entitled to judgment as a matter of law. See Allstate Ins. Co. v. Mazzola, 175 F.3d 255, 258 (2d Cir.1999); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202–03 (2d Cir.1995). To do this, we resolve all ambiguities and factual inferences in favor of the party against whom summary judgment was granted. See, e.g., Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc. ., 182 F.3d 157, 160 (2d Cir.1999). Summary judgment, however, cannot be defeated simply by conclusory allegations. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996). Instead, the non-moving party must come forward with specific facts that create a genuine issue for trial. See, e.g., West–Fair Elec. Contractors v. Aetna Cas. & Sur. Co., 78 F.3d 61, 63 (2d Cir.1996) (per curiam).

[1] [2] [3] [4] Despite our concerns with the conduct of the New Hartford Police Department in this case, we find that the judgment of the District Court must be affirmed, albeit for somewhat different reasons than relied upon by the District Court. First, as noted by the District Court, a claim for false arrest cannot stand if probable cause existed at the time of the arrest. See Singer v. Fulton County Sheriff, 63 F.3d 110, 118–19 (2d Cir.1995), cert. denied, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). While an arrest pursuant to a facially valid arrest warrant is presumed to be made with probable cause, see Artis v. Liotard, 934 F.Supp. 101, 103 (S.D.N.Y.1996), "[a] plaintiff can demonstrate that this right [not to be arrested without probable cause] was violated where the officer submitting the probable cause affidavit" acted "with reckless disregard for the truth." Soares v. Conn., 8 F.3d 917, 920 (2d Cir.1993) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991)). Lt. O'Neill's actions in ignoring exonerating information offered to him and then causing an arrest warrant to be issued without further investigation could be construed as acting in "reckless disregard for the truth," thereby rebutting the presumption of probable cause. Id. Yet even if Lt. O'Neill's actions were reckless, to sustain a § 1983 cause of action against a municipality such as New Hartford, the Martinettis must be able to show that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers" or that the actions were done "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell v. Dep't of Soc. Serv. of City of N.Y., 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Martinettis have not alleged that New Hartford had either a policy or custom of ignoring exonerating evidence presented to a police officer, much less presented evidence establishing a triable factual issue. Therefore, their cause of action against the city based on Lt. O'Neill's conduct cannot stand.

**\*33 \*\*3** [5] [6] For similar reasons, the Martinettis' claim based on the actions of Topor also must fail. The Martinettis contend that the arrest warrant was obtained by false and fraudulent means because the Certificate of Protest prepared by Topor contained material misrepresentations. An arrest warrant procured by "fraud, perjury or the misrepresentation or falsification of evidence" can overcome the presumption of probable cause. Artis, 934 F.Supp. at 103. However, even accepting this argument, the Martinettis have brought forth no evidence that Topor's actions in preparing

the allegedly invalid Certificate of Protest were pursuant to an official policy of New Hartford or that the town supervised or directed her actions. There is no evidence in the record that Topor used resources of the New Hartford Police Department or that her check protesting activities fall within the scope of her employment. The fact that the Police Department has used Certificates of Protest prepared by Topor in the past, and that her supervisors were aware that she engaged in such activities, is insufficient to establish the existence of a custom or official policy. Therefore, without evidence that

Mrs. Martinetti's arrest was the product of an official policy or unofficial custom of New Hartford, their § 1983 claim cannot stand.

For the foregoing reasons, the decision of the District Court is AFFIRMED.

**All Citations**

12 Fed.Appx. 29, 2001 WL 533676

---

Footnotes

1    The Plaintiffs conceded below that the New Hartford Police Department is not a separate entity that can be sued; therefore, we will proceed, as did the District Court, by treating the Town of New Hartford as the sole defendant.

---

**End of Document**                                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2004 WL 2884306
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Isaiah BROWN, Plaintiff
v.
THE CITY OF NEW YORK, et al., Defendants.

No. 98 CV 3844 ((GBD).
|
Dec. 10, 2004.

*MEMORANDUM DECISION AND ORDER*

DANIELS, J.

**\*1** Pro se plaintiff, an inmate in a New York State correctional facility, filed this action alleging judicial, police, prosecutorial, and civilian misconduct associated with plaintiff's arrests and prosecutions for criminal offenses arising from three separate incidents.

Defendant Zebedee Pouncey accused plaintiff of stabbing him with a knife, in May of 1996, allegedly because Mr. Pouncey failed to satisfy an outstanding debt owing to plaintiff for a drug purchase. Plaintiff was indicted for attempted murder in the second degree, assault in the second degree and criminal possession of a weapon in the third degree. Plaintiff was released after posting $25,000 bail. In October of 1996, plaintiff assaulted a female acquaintance, and allegedly raped and sodomized her. On January 2, 1997, in exercising a valid search warrant of an apartment not belonging to plaintiff, plaintiff was found in the apartment where controlled substances and drug paraphernalia were found. Defendant was arrested at 8:15PM, and charged in a felony complaint with various drug charges. A grand jury had been convened that day and heard evidence relating to plaintiff's assault on the female victim. The grand jury indicted plaintiff on charges of rape, sodomy and assault. At 10 AM on January 3, 1997, defendant, who was still in police custody on the drug charges, was arrested on the sexual assault charges, and the indictment was filed later that day. On January 6, 1997, plaintiff appeared before a Criminal Court Judge in connection with his two new arrests. The judge granted bail on the drug case in the amount of $30,000, and remanded plaintiff on the indicted sexual assault case. On January 8, 1997, plaintiff was indicted on the drug case.

On January 29, 1997, plaintiff appeared before a New York State Supreme Court Justice on the sexual assault charges. On November 25, 1997, plaintiff was found guilty after trial of criminal possession of a controlled substance in the seventh degree and two counts of criminally using drug paraphernalia in the second degree. Plaintiff was also found guilty, after jury trial, of charges stemming from the attempted murder and sexual assault cases, although he was not convicted of the top counts charged in those indictments. All of plaintiff's convictions were affirmed on appeal. *People v. Brown,* 731 N.Y.S.2d 378 (N.Y.App.Div.2001).

Plaintiff commenced the present action against the City of New York, a number of police officers, the Criminal Court Judge, the Supreme Court Justice, the clerk of the state court, the warden of the detention center, the attorney who represented him during his criminal proceedings, the Assistant District Attorney who prosecuted the case against him, and three of the trial witnesses who testified against him at trial, including defendant Zebedee Pouncey. The original complaint in this case contained causes of action for false arrest, malicious prosecution, and claims defendants engaged in conduct to deprive plaintiff of his constitutional rights to due process, equal protection, freedom of speech, freedom from cruel and unusual punishment, and denial of his access to the court. As summarized in then-Chief Judge Thomas P. Griesa's June 19, 1998 Order:

> **\*2** More specifically, plaintiff alleges that on January 2, 1997 and again on January 3, 1997, he was falsely arrested by New York City police officers. Plaintiff further alleges that defendants deliberately delayed his arraignment for both arrests beyond the 24 hours allowed by state law and the thirty-six hours allowed by the United States Constitution. In addition, plaintiff claims that the clerk of the New York State Supreme Court failed to properly notify his custodian to produce him for two hearings on February 15 and April 17, 1997. Plaintiff also charges the warden of his facility with violation of his constitutional rights regarding the hearings for failure to produce him in court. Plaintiff further claims that Assistant District Attorney Plansky induced three witnesses to falsely

testified (sic) at his criminal trial. Finally, plaintiff allege that defendants have entered into a conspiracy to deprive him of his constitutional rights.

If such claims are included, the entire amended complaint will be dismissed as a violation of this Order. (Order of 6/19/98, at 10).

Judge Griesa held that "plaintiff's allegation of a conspiracy to deprive him of his constitutional rights must be dismissed as to all defendants." (Order of 6/19/98, at 3). Judge Griesa found that there were insufficient factual allegations in the complaint to support such a cause of action. Additionally, Judge Griesa's Order specifically dismissed the action against the Supreme Court Justice on the grounds that judges have absolute immunity from suit for judicial acts performed in their judicial capacities. *Mireles v. Waco,* 502 U.S. 9 (1991). Apparently, Judge Griesa's Order inadvertently failed to state that the action was dismissed against the Criminal Court Judge on the same grounds. The complaint was also dismissed against the Assistant District Attorney and the clerk of the state court on immunity grounds. Since the complaint failed to demonstrate the requisite state action, the claims against plaintiff's former attorney were dismissed. Additionally, plaintiff had alleged that the warden of the correctional facility had twice failed to produce him in court for two hearings. Judge Griesa dismissed the claims against the warden finding that plaintiff failed to allege that the warden had any direct or personal involvement in the failure to produce him. The causes of action against the trial witnesses, including defendant Zebedee Pouncey, were dismissed because witnesses are absolutely immune from liability under § 1983 for testimony given in court proceedings even if it is subsequently demonstrated that their testimony was false. *Briscoe v. LaHue,* 460 U.S. 325 (1983); *Sykes v. James,* 13 F.3d 515, 519-20 (2d Cir.1993). Judge Griesa also dismissed plaintiff's claims for false arrest and malicious prosecution.

Judge Griesa granted plaintiff leave to amend the complaint with regard to his claim of an unreasonable detention prior to receiving a probable cause determination as to his arrests on both the drug and sexual assault charges. Although Judge Griesa permitted plaintiff to file an amended complaint, he instructed plaintiff as follows:

> **\*3** Plaintiff may not amend his complaint regarding the claims which have been dismissed as detailed above.

Plaintiff sought reconsideration of Judge Griesa's Order. By Order dated July 10, 1998, Judge Griesa held that "plaintiff's request to amend his complaint regarding the conspiracy claims and his allegations against defendants" the Supreme Court Justice, the prosecutor, the warden, plaintiff's former defense counsel, and the three trial witnesses, including Mr. Pouncey, "must be dismissed for the reasons stated in the June 1, 1998 Order. Nothing in plaintiff's instant motion justifies the setting aside of this Court's Order finding these allegations to be without merit." (*Id*. at 3). Judge Griesa did grant plaintiff leave to amend his false arrest and malicious prosecution claims based on plaintiff's allegations that he was acquitted of certain counts of the indictment and others counts were dismissed. Judge Griesa's Order noted, "plaintiff must also name as defendant(s) all person(s) involved in his false arrest and malicious prosecution claims, and describe what each individual did or fail to do that gives rise to his claims." (*Id.* at 5).

Plaintiff filed an amended complaint which he entitled, "Second Amended Complaint" which is the complaint presently before this Court. Plaintiff again named as defendants Zebedee Pouncey and the Criminal Court Judge. Plaintiff wrote the Pro Se Office regarding service of this amended complaint upon Mr. Pouncey. By letter dated November 2, 1998, the Pro Se Clerk advised plaintiff that both of Judge Griesa's Orders specified that Mr. Pouncey was not to be named as a defendant. (Letter from Horton to Brown of 11/2/98, at 1). It was plaintiff's position that he was not precluded from naming Mr. Pouncey as a defendant based upon Judge Griesa's June 19 [th] Order which indicated he could amend his complaint with respect to the false arrest and malicious prosecution claims naming "all" individuals involved. In the amended complaint, plaintiff alleges that Mr. Pouncey caused plaintiff to be arrested and prosecuted on charges Mr. Pouncey knew plaintiff did not commit.

This case was reassigned to Judge John E. Sprizzo. By Order dated October 29, 1998, Judge Sprizzo directed the Pro Se Clerk to provide plaintiff with a summons containing the names of all defendants, including Mr. Pouncey. The case was subsequently again reassigned to another judge. Plaintiff

made a motion for a default judgment against Mr. Pouncey. By Order dated July 28, 1999, that judge denied the motion "for the reasons, among others, set forth by the Honorable Thomas P. Griesa's Order dated July 10, 1998, which among other things, states: 'The claims against defendant[ ] Zebedee Ponucey (sic) must be dismissed because witnesses are absolutely immune from liability for damages under § 1983 for testimony given in court proceedings ...'" , [1]

**\*4** Defendant Pouncey now moves pro se to dismiss the action against him for lack of service of process. The remaining defendants, *i.e.,* the City of New York and the police officers ("the City defendants"), are moving to dismiss the plaintiff's second amended complaint for failure to state a cause of action for which relief may be granted. Plaintiff has also moved to again amend his complaint to include claims of conspiracy and denial of access to the courts claiming Judge Griesa had improperly dismissed those causes of action. The matter was referred to Magistrate Judge Michael H. Dolinger for a Report and Recommendation ("Report"). After giving appropriate notice to the parties, the magistrate judge converted the City defendants' motion to one for summary judgment.

The magistrate judge stayed the remaining discovery pending resolution of the motion. Although discovery in this case was to be completed in 1999, there have been a number of postponements of that deadline. Extensive discovery has taken place throughout the years that this matter has been pending. Magistrate Judge Dolinger advised plaintiff that he should specifically identify any further discovery he needed in connection with the summary judgment motion when he submitted his opposition papers.

In response thereto, plaintiff filed a Rule 56(f) affirmation setting forth the additional discovery he was seeking. Plaintiff indicated that, although not previously sought, it is now necessary to depose the Assistant District Attorney who prosecuted him, and other police personnel because defendants attached to their moving papers, as an exhibit, a prior affirmation submitted by the prosecutor in a civil state case commenced by plaintiff seeking documents under the Freedom of Information Act. This Court has not taken into consideration the contents of the affirmation in determining the motions. Notwithstanding plaintiff's contentions to the contrary, the affirmation is irrelevant to such issues as the existence of probable cause, the existence of a sex crime victim, the reason why certain criminal charges were dismissed, and whether the police officers are entitled to

qualified immunity. Additionally, plaintiff claims that he needs to depose the prosecutor to learn what the police officer told him, as well as procedural issues related to the indictment, such as why Officer Lebron did not testify before the grand jury, why a felony complaint was drafted, and why the indictment was not immediately filed. All of these issues are also the basis upon which plaintiff again seeks discovery of the District Attorney's Office's files regarding his criminal cases. Plaintiff also wishes to depose his victim in the sexual assault case regarding what she told the detective and the prosecutor. Finally, plaintiff wants to depose all police officers who were present when the search warrant was executed in the drug case to determine whether there was probable cause for his arrest and prosecution, and whether Officer Kennedy suppressed evidence and committed perjury.

**\*5** Magistrate Judge Dolinger concluded that plaintiff's requests for further discovery was merely an attempt by plaintiff to try to uncover facts that would show there was no probable cause for his arrest and prosecution in the drug and sexual assault cases. The magistrate judge found that the requested discovery would not save plaintiff's claims, and hence denied him further discovery. This Court agrees that all relevant discovery has already been completed in this action, and such discovery has failed to uncover any support for the claims asserted in the second amended complaint. The additional discovery sought by plaintiff clearly would not impact on the resolution of the issues presented in any of the subject motions.

In his Report, Magistrate Judge Dolinger recommended that plaintiff's motion to amend be denied. He also recommended that the claims against Mr. Pouncey be dismissed. Additionally, it was recommended that the City defendants' summary judgment motion be granted as to all claims, with one exception. Magistrate Judge Dolinger recommended that summary judgment be denied with regard to plaintiff's claim, against defendants, Officer Kennedy and the City of New York, that he was denied a prompt probable cause determination with respect to the drug case. The City defendants object to that limited portion of the Report. Plaintiff has filed extensive objections to the Report. This Court finds that all of plaintiff's objections lack merit or are inconsequential to the determination of the motions. Furthermore, the Court finds that defendant's substantive objection is meritorious. Accordingly, dismissal of the complaint is warranted.

The Court must make a *de novo* determination as to those portions of the Report to which there are objections. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C). It is not required that the Court conduct a *de novo* hearing on the matter. *United States v. Raddatz,* 447 U.S. 667, 676 (1980). Rather, it is sufficient that the Court "arrive at its own, independent conclusion" regarding those portions to which the objections were made. *Nelson v. Smith,* 618 F.Supp. 1186, 1189-90 (S.D.N.Y.1985) (quoting *Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir.1983)). Accordingly, the Court, in the exercise of sound judicial discretion, must determine the extent, if any, it should rely upon the magistrate judge's proposed findings and recommendations. *Raddatz,* 447 U.S. at 676. The Court may accept, reject or modify, in whole or in part, the findings and recommendations set forth within the Report. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C). Where there are no objections, the Court may accept the Report provided there is no clear error on the face of the record. *Nelson v. Smith,* 618 F.Supp. at 1189; *see also Heisler v. Kralik,* 981 F.Supp. 830, 840 (S.D.N.Y.1997), *aff'd sub nom. Heisler v. Rockland County,* 164 F.3d 618 (2d Cir.1998).

Plaintiff has raised well in excess of fifty objections to the Report. Those objections fall within the following categories: (1) erroneous factual findings not supported by the record, the second amended complaint and/or plaintiff's opposition papers; (2) omissions of pertinent facts; (3) consideration of hypothetical arguments; (4) refusal to permit plaintiff to obtain the discovery necessary to oppose the motions; (5) erroneous legal analysis and conclusions of law; (6) failure to provide plaintiff with an opportunity to respond to the *sua sponte* arguments raised by the magistrate judge on behalf of Mr. Pouncey; (7) bias of the magistrate judge; and (8) failure to permit plaintiff to amend the complaint based both on incorrect factual findings and legal analysis.

**\*6** Plaintiff sets forth a general objection to all the factual findings in the Report that are inconsistent with the allegations in the second amended complaint. Plaintiff contends that the complaint contains the best evidence and most accurate version of the events at issue. On a motion to dismiss a complaint, pursuant to Fed.R.Civ.P. 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Bolt Electric, Inc. v. City of New York,* 53 F .3d 465, 469 (2d Cir.1995). In the instant case, the motion to dismiss the complaint was converted to a motion for summary judgment. Summary judgment, pursuant to Rule 56, is warranted where there are no genuine issues of material fact and the movant

is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue for trial exists if, based on the record as a whole, a reasonable trier of fact could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). A summary judgment determination is based on a review of all of the evidence in the record. The Court's focus does not exclusively rest on the allegations set forth in the complaint. The Court must view the record in the light most favorable to the non-movant by resolving all ambiguities and drawing all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp .,* 475 U.S. 574, 587-88 (1986); *Anderson,* 477 U.S. at 255; *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995). The burden to show that there are no genuine issues of fact rests with the party seeking summary judgment. *Anderson,* 477 U.S. at 256; *Tomka,* 66 F.3d at 1304. Nevertheless, the party opposing the motion bears the ultimate burden of proof to demonstrate that there is some evidence which would create a genuine issue of material fact. *Twin Laboratories v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990). The non-movant cannot meet this burden by simply relying on mere conclusory allegations, speculation or conjecture. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986). Thus, plaintiff cannot defeat the motion for summary judgment merely by directing this Court's attention to the unsubstantiated allegations in his second amended complaint.

With regard to the specific factual findings in the Report which plaintiff is disputing, with two minor exceptions, those factual findings are either mischaracterized by plaintiff or they are supported by the record. For example, plaintiff claims that the Report suggests he was arrested after the rape indictment was filed. The Report makes no such finding. It merely indicates that after the grand jury indicted plaintiff, he was promptly arrested. At plaintiff's arraignment, the prosecutor informed the court that plaintiff was arrested on the morning of January 3rd, and that the indictment was filed in the afternoon. After the grand jury returned the indictment, but before it was formally filed, plaintiff was re-arrested and advised of the new sexual assault charges against him. Such actions effectively commences the judicial process. *People v. Cruz,* 420 N.Y.S.2d 721 (N.Y.App.Div.1979).

**\*7** Additionally, the majority of the factual findings to which plaintiff objects are irrelevant to the determination of the motions. As an illustration, plaintiff objects to the Report indicating certain individuals were named as members of the conspiracy in his original complaint. The validity of this finding is irrelevant given the fact that plaintiff filed a second

amended complaint which is the instrument that is the subject of the summary judgment motion. An amended complaint supersedes the original complaint, and renders it of no legal effect. *In re. Crysen/Montenay Energy Co.,* 226 F.3d 160, 162 (2d Cir.2000). In determining whether summary judgment is appropriate in this case, reliance on the factual allegations of the original complaint is unwarranted.

Two of plaintiff's objections to the factual findings in the Report do have merit, but they are of no legal consequence. The Report indicates that in the second amended complaint, plaintiff again named the Criminal Court Judge as a defendant, notwithstanding Judge Griesa's prior ruling that she was protected by absolute immunity. Judge Griesa's Order did state that judges' have absolute immunity from suit for judicial acts performed in their judicial capacity. In an apparent oversight, however, the Order failed to specifically dismiss the complaint against the Criminal Court Judge. Given the Order's failure to name the Criminal Court Judge as one of the defendants against whom all charges were dismissed, plaintiff may have believed he was not foreclosed from naming that judge as a defendant in his amended complaint. Plaintiff's good faith belief, however, does not alter the fact that the judge may not be sued for acting in her legal capacity during plaintiff's criminal proceedings. More importantly, the case against the Criminal Court Judge has already been dismissed, so the factual finding at issue is irrelevant. Nevertheless, the Report is modified by rejecting footnote two on page five.

Plaintiff also objects to the portion of the Report which reads: "Subsequently, the State declined to re-prosecute Brown on the open sexual-assault charge in order to spare [the victim] from having to testify again." (Report at 6). The jury did not reach a verdict on all of the charges in the indictment on the sexual assault case. On December 9, 1997, the Assistant District Attorney moved to dismiss the open counts. The prosecutor explained that the decision not to retry plaintiff "has nothing to do with the merits of those counts." (Tr. at 4, *People v. Brown,* Ind. # 323/98). Rather, he indicated that the victim had moved on with her life, and thus he wished to protect her from having to testify again at trial. (*Id.* at 4-5). The prosecutor's proffer is not alone a sufficient basis to support an affirmative finding by this Court as to why plaintiff was not retried. Accordingly, it is more accurate to state, "Subsequently, the State declined to re-prosecute Brown on the open sexual-assault charges claiming its decision was motivated by a desire to spare the victim from having to testify again."

**\*8** Such a modification does not affect the ultimate legal findings and conclusions of law contained in the Report. The record is barren of any evidence of a willful or malicious intent, on the part of the police or prosecution, to overcharge plaintiff with more serious criminal conduct than he was suspected of committing. The evidence was presented to a grand jury which found that it supported all of the charges set forth in the indictment. Moreover, the jury did not acquit plaintiff of the subject charges. The reason for the decision not to retry plaintiff is irrelevant to the determination of the present motions. It should nevertheless be noted that nothing in the record contradicts the prosecution's claim or suggest another possible explanation for not retrying plaintiff.

Plaintiff has several objections regarding the failure to include particular facts in the Report. The Court has reviewed the individual matters which plaintiff contends should have been included in the Report, and finds that none of them were pertinent or determinative of any of the particular issues being discussed in the Report. A Report must fully set forth the relevant and material facts and must set forth the parties' legal arguments necessary to determine the motions. The omission of irrelevant facts is not fatal to the soundness of the Report.

Plaintiff also seeks to strike those portions of the Report which concern possible arguments that could have been raised by plaintiff. Since plaintiff is proceeding pro se, his pleadings are to be liberally construed and are to be interpreted in such a fashion as to raise the strongest argument they suggest. *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). The references in the Report to possible arguments that plaintiff may have raised appears to be merely an attempt by the magistrate judge to evaluate plaintiff's complaint, as well as his opposition papers, to insure that the potential arguments that the plaintiff failed to assert, were nevertheless addressed; although they were ultimately found to be unavailing. There is no basis to strike those portions of the Report as they fail to have any impact on the validity of the legal findings and recommendations contained therein.

Plaintiff also raises a number of objections to the Report claiming that the necessary evidence was not available to him to oppose the motions because Magistrate Judge Dolinger refused to permit plaintiff further discovery on these issues. The parties had concluded all relevant discovery in this case. This Court has reviewed the specific discovery requests plaintiff submitted to the magistrate judge. None of

the requested discovery would have had an impact on the legal analyses and recommendations set forth in the Report. Additionally, this Court has reviewed each of plaintiff's individuals objections to the Report relating to the lack of discovery, and finds that further discovery would not have altered the magistrate judge's particular findings with regard to these specific portions of the Report. The discovery sought by plaintiff can be described as a mere fishing expedition in search of any evidence which might save his clearly untenable legal claims against the defendants.

**\*9** Plaintiff also sets forth a number of objections regarding the validity of the magistrate judge's legal analysis. Plaintiff sets forth general objections concerning Magistrate Judge Dolinger's failure to recognize that plaintiff's constitutional rights were violated. Additionally, plaintiff sets forth a number of specific objections to the legal analysis. To the extent that Magistrate Judge Dolinger recommended plaintiff's causes of action be dismissed, this Court finds that the Report contains an extremely thorough and legally correct analysis. The magistrate judge properly determined that plaintiff's state law claims for false arrest and malicious prosecution, and the related federal claims arising therefrom, were legally incognizable.

"The existence of probable cause 'is a complete defense to an action for false arrest.' " *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994). Where plaintiff's conviction of the charges has been affirmed on appeal, the conviction constitutes conclusive evidence of probable cause for the arrest. *Weyant,* 101 F.3d at 852; *see also, Cameron v. Fogarty,* 806 F.2d 380, 387-89 (2d Cir.1986). Plaintiff contends that the magistrate judge failed to recognize that his claim for false arrest with regard to the attempted murder case was solely against Mr. Pouncey, and no other defendant. Limiting the cause of action in this regard is of no import.

The malicious prosecution claims are also defective in that plaintiff is unable to demonstrate that the criminal proceedings were commenced or continued against him with malice and without probable cause, and that the matters were terminated in his favor. *Fulton v. Robertson,* 289 F.3d 188, 195 (2d Cir.2002). Plaintiff has also failed to overcome the presumption that the indictments were not obtained as a result of fraud, perjury, suppression of evidence, or some other type of misconduct taken in bad faith. *Savino v. City of New York,* 331 F.3d 63, 72-73 (2d Cir.2003). Additionally, plaintiff has not made the requisite showing that his conviction was

overturned or otherwise invalidated. *Heck v. Humphrey,* 512 U.S. 477, 489 (1994). Plaintiff was not convicted of all the counts charged in the indictments, nor even the top counts therein. However, there is no basis in the record to suggest that plaintiff was charged with the more serious criminal offenses for some improper motive. *See, DiBlasio v. City of New York,* 102 F.3d 654, 658 (2d Cir.1996).

Plaintiff nevertheless argues that malice can be inferred based on two facts: (1) in the drug case, defendant, Officer Kennedy, illegally gained entry into the apartment to conduct a search; and (2) Officer Kennedy and the female victim, in the sexual assault case, are of the same ethnicity. The Report correctly notes that plaintiff is estopped from challenging the validity of the search. Plaintiff's motion to suppress the physical evidence was denied in the state criminal proceeding on the grounds that plaintiff lacked standing. In appealing his conviction, plaintiff did not raise the denial of his suppression motion as an issue, and hence plaintiff is now foreclosed from relitigating this issue. Additionally, there is simply no basis whatsoever to infer malice merely because a police officer and a victim share the same ethnicity.

**\*10** Plaintiff does not make a specific objection to the recommendation that dismissal is warranted with regard to plaintiff's cause of action for violation of his Fourth Amendment right to a prompt probable cause determination in the sexual assault case. Nevertheless, plaintiff does generally object to the recommendation that defendants' summary judgment motions be granted except with respect to the claim that plaintiff did not receive a prompt judicial determination in his drug case. This Court finds that the Report properly determined that because plaintiff was arrested in the sexual assault case after the grand jury voted an indictment, he was not entitled to a judicial probable cause determination. *Gerstein v. Pugh,* 420 U.S. 103, 117 n. 19 (1975).

Plaintiff also objects to Magistrate Dolinger's finding that the claims against defendant Pouncey should also be dismissed. Since defendant Pouncey's motion to dismiss was based solely on a claim of defective service, plaintiff argues he was deprived of an opportunity to address the summary judgment arguments raised *sua sponte* by the magistrate judge on behalf of defendant Pouncey.

It should initially be noted that the magistrate judge did not indicate that he was recommending that summary judgment be granted in defendant Pouncey's favor, as opposed to

finding that the complaint failed to state a claim against him. Even if the magistrate judge independently raised a motion for summary judgment, it would not have been inappropriate to do so. As the Second Circuit explained, in *Pangburn v. Culbertson,* 200 F.3d 65 (2d Cir.1999):

> [A] district court's independent raising and granting of summary judgment ... is an accepted method of expediting litigation. Before a district court does so, however, the record must clearly establish both the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment. *Pangburn.* 200 F.3d at 69 (internal quotation marks and citations omitted).

Magistrate Judge Dolinger's legal analysis clearly demonstrates that the causes of action against defendant Pouncey were inherently defective, and do not state a viable claim against him. Despite plaintiff's submissions in response to the Report, which is well in excess of thirty pages, plaintiff fails to set forth any argument, persuasive or untenable, which he would have raised had he known that the magistrate judge intended to consider dismissing the claims against defendant Pouncey. Even accepting the factual allegations in the complaint as true and drawing all reasonable inferences in plaintiff's favor, he fails to present any set of facts entitling him to relief. The complaint alleges that, on May 30, 1996, Mr. Pouncey reported to the police that plaintiff stabbed him. The complaint further alleges that on June 7, 1996, plaintiff was standing outside a building when Mr. Pouncey identified plaintiff to a police officer as the person who stabbed him. Such actions allegedly caused plaintiff to be arrested without probable cause, and subsequently indicted. Plaintiff further alleges that the malicious prosecution, committed by Mr. Pouncey, was exacerbated when Mr. Pouncey subsequently lied as to the motive for the stabbing.

 *11 A claim against Mr. Pouncey, under § 1983, for false arrest and malicious prosecution, does not lie because Mr. Pouncey is not a state actor. A private party may be deemed to have acted under color of law, for purposes of § 1983, if he or she acted jointly with a police officer. *Ginsberg v. Healey Car and Truck Leasing* Inc., 189 F.3d 268, 271 (2d

Cir.1999). Merely reporting a crime to the police is, however, insufficient to establish the requisite joint participation. *Id.* at 272; *see also, Torgerson v. Writsel,* 109 F.Supp.2d 107, 109 (E.D.N.Y.2000).[2]

The complaint also fails to allege legally sufficient claims for false arrest and malicious prosecution under state law as well. Plaintiff is unable to make out the necessary elements of both causes of action. Plaintiff was indicted, and convicted of charges arising from his assault on Mr. Pouncey. The conviction was affirmed on appeal. Hence, plaintiff cannot establish that there was no probable cause for his arrest, or that the case was terminated in his favor.

Nevertheless, plaintiff claims that the magistrate judge's actions, in *sua sponte* raising the legal sufficiency of the claims against Mr. Pouncey, demonstrates his bias. Plaintiff argues that such bias is further evidenced by the magistrate judge's repeated denial of his application for appointment of counsel, refusal to recognize that he never assaulted Mr. Pouncey, failure to use Mr. Pouncey's testimony; and the reliance on extraneous materials while concomitantly ignoring relevant extraneous records. Accordingly, plaintiff seeks to have the Report disregarded in its entirety. The fact that plaintiff disagrees with the factual findings of the magistrate judge, which are well supported by the record, does not suggest a bias against him. Additionally, plaintiff is not legally entitled to the appointment of counsel, and the denial of his motions in this regard was well within Magistrate Judge Dolinger's discretion. Moreover, no error was committed by reference to legal documents and materials arising from plaintiff's criminal proceedings, as well as other related litigation commenced by plaintiff. A court may consider documents attached to the complaint as exhibits or incorporated in it by reference, matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which he has knowledge of and relied on in bringing the action. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (citation omitted). Indeed, plaintiff himself attached some of his criminal court records to his second amended complaint. The magistrate judge's eighty-one page Report evinces a comprehensive and meticulous recitation of the factual history of the case, the parties' legal arguments, and an in-depth legal analysis. A review of the Report, as well as the underlying record, reveal absolutely no basis to suggest that the magistrate judge was biased against plaintiff.

**\*12** Plaintiff further objects to the Report's recommendation that plaintiff's motion to amend be denied. Plaintiff seeks to amend the complaint to reassert the claims which Judge Griesa *sua sponte* dismissed, without leave to replead, after plaintiff initially filed his original complaint. Plaintiff maintains he can assert viable causes of action for conspiracy both under §§ 1983 and 1985, with respect to the sexual assault prosecution. Additionally, plaintiff seeks to replead his cause of action for denial of his right of access to the court. Plaintiff also objects to the Report's finding that Judge Griesa's order is the law of the case. Plaintiff argues that the Second Circuit decision in *Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794 (2d Cir.1999), holding leave to amend applies to pro se litigants proceeding *in forma pauperis,* is new law vitiating the validity of Judge Griesa's order.

As Magistrate Judge Dolinger properly found, *Gomez* does not represent a change in the law, nor does Judge Griesa's Order reflect clear error or cause manifest injustice. The proposed causes of actions which plaintiff seeks to replead are substantively fatal, and hence they cannot be remedied by additional pleadings. The Second Circuit holding in *Gomez* does not afford a pro se plaintiff the right to replead a cause of action where it would be futile to do so. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). Where it is beyond question that the plaintiff can prove no set of facts that will legally support the amended claims, denial of the motion to amend is warranted. *Pangburn,* 200 F.3d at 70-71.

Even though Magistrate Judge Dolinger found that Judge Griesa's Order was the law of the case, he still reviewed the proposed claims and appropriately found them to be meritless. With regard to the conspiracy claims, the magistrate judge, in agreeing with Judge Griesa's prior Order, properly found that the prosecutor and trial witnesses are immune from suit. Additionally, the magistrate judge found that plaintiff's former defense counsel is not a state actor, nor had plaintiff alleged any specific facts that would tend to demonstrate that the lawyer conspired with the prosecutor. Plaintiff argues that Magistrate Judge Dolinger failed to recognize that the conduct forming the basis of the conspiracy claims occurred pre- and post-trial, and hence the defendants are not immune from suit. Additionally, plaintiff argues that the Report fails to address additional alleged conspirators including an unidentified police employee, the attorney representing the female victim, and the City of New York. Plaintiff further objects to the Report's finding that his claim of race-based animus is stated in a conclusory fashion. Plaintiff argues that in light of the existing racism in this Country, the accusation that plaintiff, an African-American man, raped a white woman is sufficient to support the § 1985 conspiracy where neither the police officers nor the prosecutor is African-American.

**\*13** Although prosecutors enjoy immunity with regard to all acts related to their advocacy, they are not shielded from immunity from liability for manufacturing evidence during the investigatory stage. *Hill v. City of New York,* 45 F.3d 653, 662 (2d Cir.1995). Moreover, extra-judicial conspiracies wherein witnesses and police officers conspire with the prosecution to convict the plaintiff cannot avoid liability by asserting absolute immunity. *Dory v. Ryan,* 25 F.3d 81 (2d Cir.1994). Plaintiff has failed, however, to set forth sufficient factual allegations that would, if accepted as true, support a claim for conspiracy. *See, Ciambriello v. County of Nassau,* 292 F.3d 307, 325-25 (2d Cir.2002) (To establish a § 1983 conspiracy, plaintiff must show: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."); *Brown v. City of Oneonta,* 221 F.3d 329, 341 (2d Cir.2000) (quoting *Mian v. Donldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993)) (To plead a conspiracy under § 1985(3), plaintiff must allege "a conspiracy [motivated by racial animus]; (2) for the purpose of depriving, either directly or indirectly, any person or class of person of equal protection of the laws, ...; (3) an act in furtherance of the conspiracy; (4) whereby a person is ... deprived of any right of a citizen of the United States."). Plaintiff's mere conclusory assertions of the existence of such a conspiracy is insufficient to permit an amendment of the complaint to add these proposed claims. *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) (A § 1983 complaint should be dismissed where it contains "only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights ..."); *see also, Webb v. Goord,* 340 F.3d 105, 110 (2d Cir.2003) (quoting *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y.2000). ("In order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." '). Moreover, since indictments were handed down by the grand jury on all of the plaintiff's three subject arrests, and he was found guilty of charges stemming from each of those indictments, he cannot maintain a § 1983 action for conspiracy claiming his constitutional rights were violated by being arrested without probable cause. *Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001).

Similarly unavailing is plaintiff's claim that the magistrate judge erred in recommending plaintiff not be allowed to amend the complaint to replead a claim, against the warden, for denial of the right of access to the courts. The magistrate judge correctly noted that Judge Griesa dismissed the claim, as well as dismissed the warden as a defendant, finding he was not personally responsible for producing plaintiff in court. That Order further provided that plaintiff was not to replead that cause of action. Judge Griesa denied plaintiff's motion for reconsideration as it related to this claim. For purposes of the plaintiff's present motion, however, the magistrate judge assumed that plaintiff adequately pled the personal involvement of the warden in the alleged misconduct. Nevertheless, even in giving plaintiff the benefit of this presumption, Magistrate Judge Dolinger still found that plaintiff could not successfully assert this cause of action.

**\*14**  Plaintiff alleges that the warden did not have him produced in court on the two occasions when the court entertained his habeas applications. He contends that his absence deprived him of an opportunity to supplement his written submission and to personally argue the merits of his petitions. Although simultaneously represented by counsel, plaintiff brought two habeas corpus proceedings pro se in state court. Submitted with his petitions, were affidavits from plaintiff requesting that an attorney of suitable experience be assigned to represent [plaintiff] in this proceeding ..." (Klein Decl. Ex. B, Brown Aff. ¶ 6; Ex C, Brown Aff. ¶ 6). Plaintiff failed to disclose in his papers that an attorney was already representing him in the criminal matters. In plaintiff's first state habeas petition, he asserted that his detention was illegal because of the excessive prearraignment delay in violation of state law. On February 21, 1997, a New York State Supreme Court Justice denied the habeas petition and dismissed the writ. Plaintiff filed another state habeas petition again raising similar claims that his state rights were violated, but also alleged that his constitutional rights were violated including his Fourth Amendment right. In support thereof, plaintiff cited, *inter alia, County of Riverside v. McLaughlin,* 500 U.S. 44 (1991), which held that an arrestee's Fourth Amendment rights are presumptively violated where a judicial probable cause determination is not made within forty-eight hours of a warrantless arrest. In distinguishing this petition from his prior one, plaintiff noted that in his latter application "there are constitutional as well as statutory violations complained of." (Klein Decl. Ex. C at 4-5). On April 17, 1997, another New York State Supreme Court Justice denied the petition and dismissed the writ.

In order to establish a cause of action for denial of access to the courts, plaintiff must demonstrate an actual or imminent injury impairing his or her ability to prosecute a non-frivolous claim. *Christopher v. Harbury,* 536 U.S. 403, 415-16 (2002); *Lewis v. Casey,* 518 U.S. 348 (1996). Plaintiff can neither demonstrate an injury, nor that the underlying claim was not frivolous. Plaintiff asserted his arguments, with supporting statutory and case law, in his habeas corpus petitions. His absence from court did not hinder him from submitting additional written materials. Additionally, plaintiff filed these petitions pro se, and requested the court appoint him counsel. He failed to apprise the court that he was already represented by counsel in the criminal cases. Although orders were issued for plaintiff to appear in court when his habeas petitions were calendared, there is no evidence that the state court scheduled oral arguments on those dates. Nor is there any basis to infer that plaintiff would have been permitted to personally address the court, much less argue his habeas petitions, given the fact that he was represented by counsel and was awaiting trial on serious criminal charges. In any event, both habeas petitions were considered and denied. There is nothing to suggest that plaintiff's appearance in court would have altered the judges' decisions to dismiss the writs.

**\*15**  Additionally, plaintiff's habeas corpus petitions were frivolous. Plaintiff's counsel previously filed a motion seeking defendant's release on the grounds he was denied a prompt arraignment in violation of state law. That motion was considered and denied. That ruling constituted the law of the case, and warranted the denial of plaintiff's pro se habeas corpus petitions to the extent they asserted the same grounds raised by his attorney. Nor was defendant entitled to release because of the failure to receive a prompt probable cause determination. As previously discussed, plaintiff was not entitled to such a determination in the sexual assault case because an indictment based upon probable cause had already been voted by the grand jury.

The City defendants object to the magistrate judge's recommendation that summary judgement be denied with regard to plaintiff's claim that his Fourth Amendment rights were violated due to the delay in obtaining a probable cause determination in the drug case. Defendants disagree with the magistrate judge's finding that plaintiff is not collaterally estopped from raising this issue. This Court agrees that plaintiff is not collateral estopped. [3] However, the claim itself must still be dismissed as it is legally deficient.

The Report suggest that the delay in having plaintiff appear before a judge may have violated his Fourth Amendment right to a prompt probable cause determination. Magistrate Judge Dolinger found that "the constitutional guarantee is to a prompt probable-cause determination, and if that protection is not afforded, the right has been denied." (Report at 32). The threshold question in a § 1983 action is whether plaintiff has been deprived of a right guaranteed by the Constitution or laws. *Baker v. McCollan,* 443 U.S. 138, 140 (1979). Although "a delay exceeding 48 hours [in obtaining such a probable cause determination] presumptively violates the Fourth Amendment," *Powell v. Nevada,* 511 U.S. 79, 83 (1994), the determination, in and of itself, is not a constitutional right guaranteed by the Fourth Amendment. The Fourth Amendment protects against pretrial deprivations of liberty. *Albright v. Oliver,* 510 U.S. 266, 274 (1994). In *Gerstein, supra,* the United States Supreme Court held that a person, arrested without a warrant and charged in an accusatory instrument, other than an indictment, must be provided with a prompt judicial probable cause determination. Such a determination serves as a vehicle to be utilized in ensuring that one's liberty rights, as guaranteed by the Fourth Amendment, are not violated. *Gerstein,* 420 U.S. at 112 ("To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible."). A police officer's "on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of a crime, and for a brief period of detention to take the administrative steps incident to arrest." *Gerstein,* 420 U.S. at 113-14. The *Gerstein* Court found that a neutral determination of probable cause is a necessary safeguard to protect an arrestee from the serious consequences flowing from a prolonged detention such as jeopardizing employment, interruption of one's source of income, and impairing family relationships. *Gerstein,* 420 U.S. at 114. Sure dire personal and professional repercussions may be the result of an arrest based on an incorrect or unfounded suspicion. *McLaughlin,* 500 U.S. at 52.

**\*16** Nevertheless, the Government has a countervailing interest in protecting the public by apprehending individuals reasonably suspected of criminal activity. *Id.* at 51. In striking a balance between the competing interests of the accused and the Government, the United States Supreme Court has held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein,* 420 U.S. at 113-14. The

requirement that the judicial determination of probable cause be promptly made is satisfied if done within forty-eight hours of the arrest. *McLaughlin,* 500 U.S. at 55. This is not a per se rule however. If an accused can demonstrate that the probable cause determination was unreasonably delayed, a constitutional violation may still be found despite the fact that a determination was made within the forty-eight hour period. *Id.* at 56. "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.* If the probable cause determination occurs after the forty-eight hour mark, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* at 57.

A probable cause determination is not, however, required when the accused is arrested for criminal offenses charged in an indictment. *Gerstein,* 420 U.S. at 117 n. 19; *see also, United States v. Contreras,* 776 F.2d 51, 54 (2d Cir.1985). A properly convened grand jury's determination to indict an individual "conclusively determines the existence of probable cause," and such a determination alone serves as a sufficient basis to detain an individual in lieu of a judicial determination. *Gerstein,* 420 U.S. at 117 n. 19 (quoting *Ex Parte United States,* 287 U.S. 241, 250 (1932)); *see also, Baker,* 443 U.S. at 142; *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 599 (1950). To require a probable cause determination after an indictment is returned would constitute an "empty ritual, as the government's burden of showing probable cause would be met merely by offering the indictment. Even if the [judicial officer] disagreed with the grand jury, he [or she] could not undermine the authority of its finding." *Contreras,* 776 F.2d at 54 (quoting *Sciortino v. Zampano,* 385 F.2d 132, 133 (2d Cir.1967)).

The focus in a § 1983 claim for wrongful detention is not the basis for the arrest, but rather the circumstances surrounding the custodial detention following that arrest. *See, Sivard v. Pulaski County I,* 959 F.2d 662, 665 (7th Cir.1992). The magistrate judge recognized that within the presumptively constitutional forty-eight hour period, "the State was entitled to hold [plaintiff] by virtue of the return of the sexual-assault indictment." (Report at 38). Plaintiff was detained less than twenty-four hours on the drug charges before he was re-arrested for rape and related charges contained in the grand jury indictment. Since no probable cause determination is required when an individual is charged in an indictment, plaintiff was being properly detained from the time of his re-arrest.

**\*17** The magistrate judge concluded that although plaintiff may not have suffered any damages as a result of "this constitution violation, the absence of such damages does not preclude a finding of liability based on the constitutional deprivation, together with the prospect of an award of at least nominal damages." (Report at 32). However, defendants' actions in not obtaining a prompt probable cause determination on the drug case could not have violated plaintiff's liberty rights. Regardless of defendants' actions or inactions, plaintiff was detained because of the sexual assault indictment against him. Plaintiff cannot demonstrate any damages, because he sustained no injury as a result of the delay in holding a probable cause hearing. He was not entitled to release or a hearing once he was indicted by the grand jury. While it is true that an award of nominal damages can be granted even where a plaintiff has sustained no injury, such an award is only appropriate where plaintiff has proved a violation of a substantive constitutional right. *Amato v. City of Saratoga Springs,* 170 F.3d 311, 317 (2d Cir.1999); *see also, Shain v. Ellison,* 273 F.3d 56, 66 (2d Cir.2001); *Dawes v. Walker,* 239 F.3d 489, 497 (2d Cir.2001) ("[O]ur circuit precedent holds that it is error for courts not to award nominal damages in § 1983 actions where a constitutional violation is established."). Nominal damages are not available absent a showing by plaintiff of a deprivation of an absolute right. *Fassett v. Haeckel,* 936 F.2d 118, 121 (2d Cir.1991) (relying on *Smith v. Coughlin,* 748 F.2d 783 (2d Cir.1984)). In the case at bar, an award of nominal damages is precluded because plaintiff's Fourth Amendment rights were not violated. Plaintiff's detention was based on a finding of probable cause by the grand jury indictment in the sexual assault case. Thus, plaintiff cannot demonstrate the requisite constitutional violation.

Plaintiff's Fourth Amendment liberty rights were not violated for failure to obtain a prompt probable cause determination with regard to the drug charges, because plaintiff could no longer be released from custody as a result of his arrest on the indicted case. Had plaintiff received a probable cause determination by a judge within forty-eight hours of his arrest, *i.e.,* the presumptively constitutional time period, and the judge found that there was no probable cause to detain plaintiff on the drug case, plaintiff was still not free to leave police custody. Therefore, plaintiff's liberty rights were not infringed by any delay in obtaining a probable cause determination on the drug charges in light of the fact he was being held on the indicted sexual assault charges. *See e.g., Alkire v. Irving,* 330 F.3d 802, 814 (6th Cir.2003)

(no probable cause determination required where suspect is also being held on an unrelated warrant); *see also, Sivard v. Pulaski County II,* 17 F.3d 185, 191 (7th Cir.1994) (while not deciding the issue, the Seventh Circuit doubted *Gerstein* applicability where arrestee did not receive a prompt probable cause determination, but he was also being held for extradition to another state where an indictment had been lodged against him); *Wells v. Manhattan Criminal Court Arraignment # 3,* 2000 WL 460458 (S.D.N.Y. Apr. 20, 2000) (since plaintiff acknowledged being held on a warrant and failed to allege he was denied any particular right that a prompt probable cause determination was designed to secure, the delay in receiving such a determination did not support a § 1983 claim). The concerns expressed by the *Gerstein* Court, regarding the personal and professional consequences an arrestee may suffer due to a prolonged detention, are inapplicable here. Any adverse consequences that plaintiff may have suffered, would have invariably occurred because his protracted lawful detention was solely attributable to the indicted sexual assault case.

**\*18** It is beyond question that the police should make every effort to minimize the time a presumptively innocent person remains in custody. *McLauglin,* 500 U.S. at 58. Plaintiff's detention was not simply the result of his warrantless drug arrest, but rather was due to the grand jury's conclusive finding of probable cause in the sexual assault case. Had plaintiff been arraigned on the indicted case and either granted bail or released on his own recognizance prior to a judicial probable cause determination in plaintiff's drug case, it might then be presumed that plaintiff's constitutional rights were violated by his detention and the prolonged delay in securing such a determination. However, that clearly did not occur here. Hence, plaintiff's cause of action for violation of his Fourth Amendment rights, in connection with the prolonged delay in obtaining a probable cause hearing on his drug case, cannot withstand defendants' motion for summary judgment.

The Court has examined the remaining portions of the Report to which there were no objections, and find that they are not facially erroneous.

Accordingly, the Report and Recommendation is hereby adopted except to the extent as specifically rejected or modified herein. Plaintiff's motion to amend the complaint is denied. Defendants' motion for summary judgment is granted as to all defendants, and all claims in the complaint are dismissed with prejudice.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 2884306

Footnotes

1    The Criminal Court Judge previously moved to dismiss the complaint against her, which was granted by the judge.

2    Plaintiff makes it clear, in his objections to the Report, that his claims against Mr. Pouncey arise from the alleged action taken by Mr. Pouncey, alone, and not jointly with any state actor. He states:

    Plaintiff asserts a false arrest claim against Pouncey himself not any of the City defendants ... Moreover, plaintiff argues that Pouncey had personal responsibility for his arrest and prosecution not any of the City defendants ... (Pl.'s Objections at 9).

3    This Court disagrees with the Report's finding that plaintiff never raised the federal claim in state court. Nevertheless, given the fact that the doctrine of collateral estoppel is based on the concept of fairness and given the fact that plaintiff contends that the failure to produce him in court deprived him of a full opportunity to litigate this issue, plaintiff should not now be precluded from re-litigating this claim. *Hickerson v. City of New York,* 146 F.3d 99, 104, 109 (2d Cir.1998); *In re Sokol,* 113 F .3d 303, 306 (2d Cir.1997) (citations omitted).

---

**End of Document**                                                                      © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 2541617
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Alla BERNSHTEIN, Plaintiff,
v.
The CITY OF NEW YORK, Detective
Raymond Brockmann, Defendants.

No. 08 Civ. 2906(AKH).
|
June 22, 2010.

### SUMMARY ORDER RESOLVING CROSS–MOTIONS FOR SUMMARY JUDGMENT

ALVIN K. HELLERSTEIN, District Judge.

**\*1** While attempting to enter a federal building, Plaintiff was found to be in possession of a badge that resembled a New York City patrolman's shield and was arrested for possession of a forged instrument. She was taken into custody by Detective Raymond Brockmann and spent between 35 and 39 hours in custody before being released. Plaintiff contends that during her detention, a female police officer stated that she would personally make sure Bernshtein was detained as long as possible. Bernshtein also alleges that, while in custody, she began menstruating and was denied feminine care products. All charges against her were eventually dropped. Plaintiff now brings this action for false arrest, malicious prosecution, and excessive detention.

The parties cross-moved for summary judgment and appeared before me for oral argument. For the reasons stated on the record, Defendants' motion for summary judgment is granted with respect to Plaintiff's claims for false arrest, malicious prosecution, and *Monell* liability. Plaintiff's motion is denied to the same extent.

However, the question remains whether Plaintiff was subjected to an unreasonable pre-arraignment delay. Plaintiff raised this issue in the complaint but it was not argued in the moving papers. At oral argument, I asked the parties to brief the issue and now hold that this question presents an issue of fact that must be resolved at trial.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To guard against unreasonable seizures, following a warrantless arrest, the arrestee must be presented to a judicial officer for a prompt determination of probable cause. *Gerstein v. Pugh,* 420 U.S. 103, 125 (1975). In *County of Riverside v. McLaughlin,* the Supreme Court held that 48 hours was the presumptive outside limit for a delay in presentment. 500 U.S. 44, 56 (1991). A delay less than 48 hours can violate an arrestee's Fourth Amendment rights if presentment was "delayed unreasonably." *Id.* A delay is unreasonable if it is "motivated by ill will against the arrested individual, or [constitutes] delay for delay's sake." *Id.* The Supreme Court cautioned that, when reviewing claims of unreasonable detention, courts "must allow for a substantial degree of flexibility" and be mindful of "the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, ... and other practical realities." *Id.* at 56–57.

It is undisputed that Plaintiff was detained for less than 48 hours, but that does not end this inquiry. The issue here is not the number of hours Plaintiff was detained, but whether her detention was "delayed unreasonably." *Id.* at 56. That issue necessarily involves a question of intent. Was the pre-arraignment delay "motivated by ill will" toward Plaintiff? Is malice established when a police officer states that Plaintiff would be detained a long as possible, or when Plaintiff is denied necessary feminine care products? These are disputed issues of material fact that must be resolved by a jury, not by a judge on a motion for summary judgment.

**\*2** The parties shall appear for a final pretrial conference on Friday, July 30, 2010 at 10:00 a.m. in Courtroom 14D. The parties should be prepared to begin the trial on Tuesday, August 10, 2010.

The Clerk shall mark the motions (Doc. Nos.52, 56) terminated.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 2541617

**Bernshteln v. City of New York, Not Reported in F.Supp.2d (2010)**

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

---